COBB, Judge,
dissenting.
The plaintiffs (Munsons) settled a personal injury case with the tortfeasors (Comas) and the latter’s carrier, Cincinnati, for $50,-000.00. The Munsons sought advance approval of this settlement from their own U/M carrier, Hartford, but Hartford refused to surrender its subrogation rights against the Comases, who had some uncertain property interests. The settlement was accepted in June, 1984, and involved a release of the Comases, thereby abrogating Hartford’s subrogation rights in violation of the Munsons’ policy with Hartford.
In July, 1984, Cincinnati apprised Hartford that the Munsons had accepted Cincinnati’s offer, but apparently there was no mention of a release. Had Hartford known of the release at that time, it should have denied U/M coverage based on the policy breach by the Munsons and then it would have been the Munsons’ burden to overcome the presumption of prejudice to the insurer resulting from the loss of its subro-gation rights in any subsequent declaratory judgment action.
However, Hartford neither denied coverage nor inquired as to a release accompanying the settlement. Instead, according to the deposition of Hartford’s counsel, Lang-don, he assumed the settlement proceeds were held in trust, a common practice, pending a “finalized” settlement and release. Hartford made no further inquiry as to the status of the settlement. In either October or November, 1984, counsel for the Munsons demanded arbitration of the U/M claim; no objection was raised nor any delay sought by Hartford. An arbitration hearing was held on February 25, 1985. At the beginning of that hearing the following colloquy occurred between Attorney Langdon, representing Hartford, and Attorney Piccin, representing the Munsons:
MR. LANGDON: Steve, may I just — you haven’t actually made recovery from Cincinnati; is that right?
MR. PICCIN: Yes, I have.
MR. LANGDON: Okay, which would be a set-off, right?
MR. PICCIN: Well, that’s for the arbitrators to decide. Since you brought up the question, I should mention, I suppose, that Cincinnati, who is the liability carrier, has paid its limits, and I don’t know whether its appropriate for me to tell you what they are or not, but—
Despite this exchange, which apprised Hartford that the Munsons had actually received Cincinnati’s policy limits, Langdon made no further inquiry, did not seek an adjournment or continuance, and proceeded with a two-day arbitration hearing. It was on this basis that the summary judgment confirming the arbitration award was entered — i.e., at that point in time it was simply unreasonable, as a matter of law, for Hartford to assert ignorance of the *320 release and its policy defense, particularly since it had had knowledge of the settlement acceptance for seven months preceding the arbitration hearing. I would affirm the trial court.